**[Cite as *Berete v. Berete*, 2021-Ohio-2941.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jaka Berete, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 20AP-478 |
| v. | : | (C.P.C. No. 18DR-2581) |
| Osman Berete, | : | (REGULAR CALENDAR) |
| Defendant-Appellant, | : | |
| Alousseny Diakite, | : | |
| Intervenor-Appellee. | : | |

D E C I S I O N

Rendered on August 26, 2021

**On brief:** *The Behal Law Group LLC, Robert J. Behal*, and *DeAnna J. Duvall,* for appellee. **Argued:** *DeAnna J. Duvall.*

**On brief:** *Alvaro G. Velez*, for appellant. **Argued:** *Alvaro G. Velez.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Osman Berete, appeals a September 16, 2020 judgment entry decree of divorce ("decree") from the Franklin County Court of Common Pleas, Division of Domestic Relations. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} The parties were married in Xenia, Ohio on October 15, 1999, and four children were born as issue of the parties' marriage. On July 2, 2018, plaintiff-appellee,

Jaka Berete, filed a complaint for divorce.  Appellant filed an answer and counterclaim on August 23, 2018, and an amended answer and counterclaim on November 28, 2018.

{¶ 3}  On June 27, 2019, the magistrate found it necessary to appoint forensic accountant W. Dana Lavelle, certified public accountant, to determine appellant's income for purposes of child support and provide an analysis as set forth in R.C. 3119.01.  Lavelle provided his analysis of appellant's income in an affidavit filed with the court on December 13, 2019.

{¶ 4}  On December 30, 2019, appellee filed a motion for vocational evaluation based on issues raised in Lavelle's affidavit.  In her motion for vocational evaluation, appellee asserted Lavelle's investigation uncovered evidence indicating appellant is underemployed causing appellee to believe a vocational evaluation was necessary to determine appellant's earning ability for purposes of determining child support.  Appellee requested the court order appellant to submit to a vocational evaluation to be performed by Dr. Richard P. Oestreich, Ph.D., CRC.  Appellee's request was heard at a hearing before the magistrate and subsequently granted pursuant to a magistrate's order filed February 13, 2020, wherein Dr. Oestreich was appointed to conduct a vocational evaluation of appellant. Dr. Oestreich conducted a vocational evaluation of appellant, prepared a vocational assessment report ("report") of appellant on March 27, 2020, and provided copies of his report to appellant and appellee's counsel.

{¶ 5}  Unresolved issues related to the termination of the parties' marriage, including appellant's income for purposes of child support, were heard before the court during a contested trial.  Prior to trial, the parties reached an agreement regarding parental rights and responsibilities for their minor children and filed a joint plan for shared parenting ("shared parenting plan"), which was incorporated into a shared parenting decree filed November 7, 2019 and made an order of the court.  The shared parenting plan reflects the amount of child support to be paid by appellant to appellee was to be determined.  At the time of trial, three of the parties' children were minors.  Pursuant to orders from the Franklin County Probate Court, appellee is the sole guardian of the parties' oldest son who is dependent due to autism.

{¶ 6}  Appellee and appellant were the only witnesses to testify at trial.  At the conclusion of trial, appellee moved to admit exhibits, including Dr. Oestreich's report

marked as appellee's exhibit No. 5, and appellant moved to admit Lavelle's affidavit, marked as appellant's exhibit G. In addition to other exhibits not relevant to the instant matter, the trial court admitted exhibits No. 5 and G, stated the trial court would accept all reports ordered by the court.

{¶ 7}  On September 16, 2020, the trial court issued a decree of divorce terminating the parties' marriage and relevant to the case before us, determined appellant's income to be $50,000 per year for purposes of child support.

## II. Assignments of Error

{¶ 8}  Appellant appeals and assigns the following two assignments of error for our review:

> [I.] The Trial Court made a reversal [sic] error when it admitted into evidence Appellee's vocational expert witness' hearsay report without his testimony and without authentication over Appellant's objection.

> [II.] The Trial Court made a reversable error by failing to permit Appellant from Cross-examining Appellee's vocational expert witness concerning this report and his qualifications.

## III. Analysis

### A.  Standard of Review

{¶ 9}   Generally, the admission or exclusion of evidence is within the discretion of the trial court, so long as that discretion is exercised in line with the rules of procedure and evidence. *Parsons v. Parsons*, 10th Dist. No. 07AP-541, 2008-Ohio-1904, ¶ 22, citing *Swearingen v. Swearingen*, 10th Dist. No. 06AP-698, 2007-Ohio-1241, ¶ 13, citing *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991). An appellate court will not reverse a trial court's decision to admit or exclude evidence absent an abuse of discretion. *Parsons* at ¶ 22, citing *Swearingen* at ¶ 13, citing *State ex rel. Sartini v. Yost*, 96 Ohio St.3d 37, 2002-Ohio-3317. In order for the decision of the trial court to amount to an abuse of discretion, the decision must be "arbitrary, unreasonable or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, " '[i]n the absence of plain error, a failure to object to evidence presented at trial constitutes a waiver of any challenge on appeal.' " *Brooks-Lee v. Lee*, 10th Dist. No. 03AP-1149, 2005-Ohio-2288, ¶ 43, quoting *Barnett v. Thornton*, 10th Dist. No. 01AP-951, 2002-Ohio-3322, ¶ 20, citing *State v. Robertson*, 90 Ohio App.3d 715,

728 (2d Dist.1993). In the civil context, an appellate court only applies the plain error doctrine in extremely rare cases when the asserted error " 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Jarvis v. Hasan*, 10th Dist. No. 14AP-578, 2015-Ohio-1779, ¶ 33, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 123 (1997).

### B. First Assignment of Error

{¶ 10} In his first assignment of error, appellant contends the trial court made a reversable error when it admitted into evidence appellee's vocational expert's report without his testimony and without authentication over appellant's objection. Appellee contends appellant's assignment of error regarding the admission of Dr. Oestreich's report is not properly before the court because appellant failed to raise the argument in the trial court. The trial court stated it would accept into evidence Lavelle's affidavit and Dr. Oestreich's report because the reports were ordered by the trial court.

{¶ 11} Regarding rulings on evidence, Evid.R. 103(A)(1) provides in relevant part:

> **Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> **(1) Objection.**
>
> In case the ruling is one admitting evidence, timely objection or motion to strike appears of record stating the *specific* ground of objection, if the specific ground was not apparent from the context[.]

(Emphasis added.)

{¶ 12} In support of her position that appellant failed to raise argument as to the admission of Dr. Oestreich's report, appellee argues the record is devoid of any objection, specific or otherwise, raised by appellant as to Dr. Oestreich, his credentials, his report, the reference and use of his report at trial, or the introduction of the report into evidence. Although appellant argues in support of his first assignment of error that he objected to the admission of Dr. Oestreich's report, appellant does not provide citation to the record that would support his argument with regard to authentication or hearsay. Notably, in his brief, where appellant asserts he did object on the record, appellant's citation to the record is blank. App.R. 103(A)(1). (*See* Appellant's Brief at 15 stating "Mr. Oestreich's vocational

report was * * * entered into evidence – without authentication – over the objection of Appellant. (Doc pg   ).")  As there was no objection made to the admission of Dr. Oestreich's report specifically on grounds of authentication or hearsay, we will apply a plain error standard of review to this assignment of error.

{¶ 13} In support of his first assignment of error, appellant argues Dr. Oestreich's report was not authenticated.  Evid.R. 901(A) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

{¶ 14} Appellee introduced into evidence as exhibit No. 5 Dr. Oestreich's report while testifying on direct.  Specifically, appellee testified she recognized the exhibit as the report of Dr. Oestreich, in which Dr. Oestreich opined appellant's income should be around $50,000.  As noted above, appellant did not raise any objection during appellee's testimony regarding Dr. Oestreich's report or his findings. During his own testimony, appellant acknowledged he met with Dr. Oestreich at appellee's counsel's office and that Dr. Oestreich authored a report, which appellant identified in his case as exhibit Z.[1] Appellant also testified that Dr. Oestreich is "a very knowledgeable man" and that Dr. Oestreich's "report is good."  (Tr. Vol. IV at 209-11.)

{¶ 15} While addressing the admission of appellee's exhibit No. 5, the trial court stated to appellant: "[Appellee's] Exhibit 5 is the report of Dr. Oestreich, the vocational evaluation.  You both addressed this.  I understand that you do not agree with his findings, but you agree that this is the report that you got and you participated in; is that correct?" Appellant responded "Correct. Yes." (Tr. Vol. IV at 263.)  The trial court then accepted into evidence appellee's exhibit No. 5.

{¶ 16} Therefore, for the reasons articulated above, we do not find the trial court erred on grounds of authentication, plainly or otherwise, in admitting Dr. Oestreich's report.

{¶ 17} Regarding the first assignment of error, appellant also asserts the trial court erred admitting Dr. Oestreich's report because it contained inadmissible hearsay.  In support, appellant points to a workers' compensation case from the Eleventh District and a

---

[1] Appellant's trial notebook was submitted electronically on a USB drive. The content page of appellant's trial notebook reflects exhibit Z, "Vocational assessment, by DR. [sic] Richard P. Oestreich, PhD, CRC."

zoning case from the Ninth District. Appellant also argues the trial court was inconsistent in its rulings regarding admission of hearsay pointing to appellee's objections and the court's questions regarding introduction of a promissory note and timesheets. However, appellant's arguments do not contemplate hearsay considerations in the context of reports of court-appointed investigators. *See* R.C. 3109.04(C) and Civ.R. 75(D).

{¶ 18} Pursuant to Evid.R. 801(C): " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay is not admissible unless one of several exceptions to the hearsay rule is applicable. *In re J.B.*, 10th Dist. No. 11AP-63, 2011-Ohio-3658, ¶ 6, citing Evid.R. 802-07.

{¶ 19} In *Shirvani v. Momeni*, 10th Dist. No. 09AP-791, 2010-Ohio-2975, this court observed that "appellate courts in Ohio have held that trial courts may consider the report of a court-appointed investigator despite the hearsay inherent in the report." *Shirvani* at ¶ 11, citing *Martin v. Martin*, 3d Dist. No. 9-03-47, 2004-Ohio-807, ¶ 19, citing *Webb v. Lane*, 4th Dist. No. 99CA12 (Mar. 15, 2000). The Third District in *Martin* held:

> Appellate courts in Ohio have held that trial courts may consider the report of a court appointed investigator despite the hearsay inherent in the report. *See Webb v. Lane*, [4th Dist. No. 99CA12 (Mar. 15, 2000)]; *Sayre v. Hoelzle-Sayre*, [100 Ohio App.3d 203 (3d Dist.1994)]. "As long as the investigator is made available for cross examination, the parties' due process rights are protected, and a court may consider the report, even without oral testimony by the investigator, and despite any hearsay that may be contained in the report." *Id.* The language of both R.C. 3109.04(C) and Civ.R. 75(D) implicitly gives the trial court the authority to admit custody investigation reports as evidence, since they can be ordered by the court and the investigator is subject to cross examination. *Scarbrough v. Scarbrough*, [9th Dist. No. 00CA007743 (July 18, 2001)]. The court must not base its decision entirely on the report of the investigator though. *Hillard v.* [*Hillard*, 29 Ohio App.2d 20 (12th Dist.1971)]. The report must contain sufficient facts from which the judge may draw his conclusion. *Nolte v. Nolte*, [60 Ohio App.2d 227 (8th Dist.1978)].

*Martin* at ¶ 19. The court further reasoned:

> Neither party in this case chose to subpoena the investigator and exercise his/her right to cross-examine the investigator as

to the contents of his report. Both parties were presented with and took advantage of the opportunity to examine the report of the investigator prior to trial. Both parties were also free to testify themselves in opposition to findings in the report and were free to call witnesses to contradict findings in the report. While the trial court did consider the investigator's report in making his findings of fact, the trial court also stated that it considered all of the evidence admitted during the trial and observed the parties and witnesses and assessed their credibility. We must assume that the trial court gave the investigator's report the appropriate weight in making his findings of fact. We find that the trial court complied with the requirements of R.C. 3109.04(C), as well as the related rules regarding the admission of evidence, and since Rule 18 of the Marion County Family Court is essentially identical to R.C. 3109.04(C), we find [] that the trial court, likewise, complied with this rule. Accordingly, we overrule [the appellant's] second assignment of error.

*Id.* at ¶ 20.

{¶ 20} We will address more fully the issue of cross-examination in our discussion of the second assignment of error, but we will note here, that the facts before us are similar to the facts in *Martin* in that neither party exercised their right to cross-examine Dr. Oestreich.  Furthermore, as discussed below, our review of the trial court's decision reveals the trial court did not base its decision entirely on the report of the investigator.

{¶ 21} Therefore, for the reasons articulated above, we do not find the trial court plainly erred on grounds of hearsay in admitting Dr. Oestreich's report.

{¶ 22} Appellant argues the trial court's admission of Dr. Oestreich's report was not harmless.  We are not persuaded.  We observe from our review of the trial court's findings as stated in the decree that in making its determinations regarding child support the court considered the affidavit of Lavelle, appellant's testimony, and the report of Dr. Oestreich, as well as appellant's documents regarding Uber earnings proffered by appellant himself. Further, with regard to imputed income, the court stated it considered the R.C. 3119.01(C)(17)(a)[2] factors and also provided the factors applicable as to its findings;

---

[2] R.C. 3119.01(C)(17)(a) provides:

"Potential income" means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:

specifically, (i), (ii), (vi), (ix), (iv), (v), and (xi). Therefore, the trial court did not solely rely on the report of Dr. Oestreich in imputing income to appellant.

{¶ 23} Accordingly, we overrule appellant's first assignment of error.

## C. Second Assignment of Error

{¶ 24} In his second assignment of error, appellant contends the trial court made a reversable error by admitting Dr. Oestreich's report without providing appellant the opportunity for cross-examination. Appellant asserts had he cross-examined Dr. Oestreich, he would have established the doctor's report was founded on faulty assumptions.

{¶ 25} Here again, appellant does not point us to any place in the record where he objected to the admission of Dr. Oestreich's report on grounds of lack of cross-examination. In addition, our review of the record[3] reveals that appellant did not specifically object to

---

**(a)** Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
**(i)** The parent's prior employment experience;
**(ii)** The parent's education;
**(iii)** The parent's physical and mental disabilities, if any;
**(iv)** The availability of employment in the geographic area in which the parent resides;
**(v)** The prevailing wage and salary levels in the geographic area in which the parent resides;
**(vi)** The parent's special skills and training;
**(vii)** Whether there is evidence that the parent has the ability to earn the imputed income;
**(viii)** The age and special needs of the child for whom child support is being calculated under this section;
**(ix)** The parent's increased earning capacity because of experience;
**(x)** The parent's decreased earning capacity because of a felony conviction;
**(xi)** Any other relevant factor.

[3] The record reflects appellee's counsel informed the trial court that she planned to call Dr. Oestreich as a witness, however, he was unavailable that same day and requested appellee call him to testify the following day at 1:30 p.m. The trial court indicated that would be alright. After appellee testified, appellee's counsel again reminded the court that appellee intended to call Dr. Oestreich at 1:30 p.m. the following day. The trial court acknowledged the same stating "[s]o they're still going to have Dr. Oestreich testify." (Tr. Vol. II at 115.) At this point in time, appellant began his case-in-chief and called himself as a witness on direct examination. Before appellant completed presenting his case-in-chief, the court recessed for the day. The following day, although appellant had not completed his case-in-chief, the court called the guardian ad litem as she was present at that time. Then, appellant resumed presenting his case-in-chief and direct examination of himself. During his testimony on direct, appellant discussed Lavelle's report. Then, without specifically identifying an exhibit and without naming Dr. Oestreich, appellant stated he cooperated with an additional vocational evaluation and "forensic expert results" that was ordered by the court. At this point, appellant testified "I really wish I would have asked him questions today. But anyway, that's it for this exhibit here." (Tr. Vol. III at 161.) During appellant's presentation that day, the court instructed him several times to organize his exhibits in order for them to be easily identifiable and presentable for the court's review. Ultimately, the court determined it could not proceed with appellant's disorganized presentation of exhibits and gave appellant time to get them in order. Due to the court's prior commitments and opposing counsel's scheduling conflicts, the court continued the case to the following week. Appellant continued presentation of his case-in-chief and, after determining that a witness he had planned to call was not present, informed the court that he had no further witnesses.

appellee not calling Dr. Oestreich for examination, nor did appellant request he be permitted to cross-examine Dr. Oestreich. Therefore, we will apply a plain error standard of review to the second assignment of error.

{¶ 26} In support of his second assignment of error, appellant argues: (1) Dr. Oestreich's report was admitted without proper foundation, (2) Dr. Oestreich was not qualified to be a vocational evaluator because his education and credentials are suited for guidance counseling for those with behavioral disabilities, and further that the trial court failed to establish Dr. Oestreich as a vocational expert and therefore erred in admitting his report, and (3) Dr. Oestreich's report was founded on faulty assumptions.

{¶ 27} With regard to the first and second arguments that the report did not have a proper foundation and Dr. Oestreich was not qualified to be an expert, in *Citibank, N.A. v. LaPierre*, 10th Dist. No. 13AP-30, 2013-Ohio-3016, ¶ 7, this court held:

> In relevant part, App.R. 16 requires that an appellant shall include in its brief "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected" and "[a] statement of the issues presented for review, with references to the assignments of error to which each issue relates." App.R. 16(A)(3) & (4). Pursuant to App.R. 12(A)(1)(b), appellate courts must "[d]etermine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16." "Thus, this court rules on assignments of error only, and will not address mere

---

At this point, the trial court confirmed that appellant had rested and immediately stated that it was time for closing arguments and to address the parties' exhibits. The record here is silent as to whether Dr. Oestreich was present in the courtroom. Nevertheless, appellant did not object to the court's statement that it was time to proceed to closing arguments, nor did he request that Dr. Oestreich be called on cross-examination. Appellee gave her closing argument. Appellant gave his closing argument. After closing arguments were completed, the court proceeded to consider the admission of appellee and appellant's exhibits. When appellant moved to admit into evidence the report of Dr. Oestreich, appellant confirmed to the trial court that although he did not agree with the findings, he agreed that it was the report that he received and participated in. The court admitted Dr. Oestreich's report and appellant did not object. After admitting several other documents presented by appellee into evidence, the court turned to consideration of appellant's documents. The court asked appellant which documents he wished the court to consider. Appellant asked the court to consider Lavelle's report and then stated: "I am asking for you to decline Dr. Oestreich's report based on the situation that we are on [sic] now. We're in the middle of [a] pandemic. It is just those reports were based on good times. This is not a good time." (Tr. Vol. IV at 270.) In response, the trial court stated it would accept all reports that were ordered by the court and appellant accepted.

Appellant's request that the court decline Dr. Oestreich's report can be construed as an argument the trial court not accord significant weight to the report of Dr. Oestreich; however, it cannot be construed as an objection on grounds of lack of cross-examination of Dr. Oestreich. Furthermore, as noted above, the record does not reflect appellant was prevented from calling Dr. Oestreich to testify.

arguments." *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶ 70.

As these allegations were not raised as assignments of error, the court will not address appellant's arguments regarding the foundation of Dr. Oestreich's report or the status of Dr. Oestreich as an expert.

{¶ 28} With regard to the third argument that Dr. Oestreich's report was based on faulty assumptions, consistent with his arguments to the trial court, appellant argues before us that the trial court should not have accorded much weight to Dr. Oestreich's report. He further argues that had he been able to cross-examine Dr. Oestreich, he could have established the same. However, we do not find the trial court plainly erred on grounds of lack of cross-examination in admitting Dr. Oestreich's report.

{¶ 29} In addition to not specifically objecting on grounds of lack of cross-examination in the trial court, appellant did not specifically argue that R.C. 3109.04(C) and Civ.R. 75(D) were violated. Nor did he make any reference at all to R.C. 3109.04(C) and Civ.R. 75(D) in his appellate brief. Nevertheless, it is necessary for us to discuss this statute and rule when considering the argument regarding cross-examination.

{¶ 30} Pursuant to R.C. 3109.04(C):

> Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, *earning ability, and financial worth* of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations. The report of the investigation and examinations shall be made available to either parent or the parent's counsel of record not less than five days before trial, upon written request. The report shall be signed by the investigator*, and the investigator shall be subject to cross-examination by either parent concerning the contents of the report*. The court may tax as costs all or any part of the expenses for each investigation.

(Emphasis added.) Further, in relevant part, Civ.R. 75(D) provides:

> On the filing of a complaint for divorce, * * * where minor children are involved, * * * the court may cause an investigation to be made as to the * * * *earning ability, and financial worth* of the parties to the action. The report of the investigation shall be made available to either party or their counsel of record upon written request not less than seven days before trial. The

> report shall be signed by the investigator and *the investigator shall be subject to cross-examination by either party concerning the contents of the report.* The court may tax as costs all or any part of the expenses for each investigation.

(Emphasis added.)

{¶ 31} This court has held: " 'R.C. 3109.04(C) permits a trial court to appoint an investigator in a child custody proceeding to conduct "* * * an investigation * * * as to the character, family relations, past conduct, earning ability, and financial worth of each parent * * *" and to report to the court on its findings. Where a court requests such an investigation and report "* * * the investigator shall be subject to cross-examination by either parent concerning the contents of the report." ' " *Smith v. Smith*, 10th Dist. No. 98AP-1641 (Dec. 29, 1999), quoting *Crosby v. Crosby*, 10th Dist. No. 92AP-1455 (June 15, 1993). In *Smith* and *Crosby*, the court-appointed investigator was a guardian ad litem. The guardian ad litem in both *Smith* and *Crosby* conducted investigations, which included interviewing the parties and some witnesses, preparing reports based on their investigations, and appearing at trial. In neither case was the guardian ad litem cross-examined.

{¶ 32} Following closing arguments in *Crosby*, the court requested the guardian ad litem report her observations regarding the parties to the court and make a recommendation based on these observations as to the custody arrangement which would be in the minor child's best interest. *Crosby*. On appeal, this court held "[u]nder the circumstances, the trial court should have provided the parties an opportunity to cross-examine the guardian *ad litem* under oath concerning the contents of her reports." *Id.*, citing R.C. 3109.04(C). However, this court went on to hold "because defendant's counsel neither objected to the court's failure to permit cross-examination of the guardian *ad litem*, nor raised the issue in any manner at trial, defendant has waived any error unless it rises to the level of plain error." *Id.*, citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982). This court reasoned the report of the guardian ad litem did not contain any evidence that was not otherwise presented at trial and, further, the independent analysis and consideration by the trial court indicates the determination of custody would not have been different had the testimony of the guardian ad litem been excluded or if the guardian ad litem had been subject to cross-examination. *Id.*

{¶ 33} In *Smith*, the guardian ad litem's report was submitted after the conclusion of trial with recommendations as to custody. *Smith*. At trial, counsel for the plaintiff requested to cross-examine the guardian ad litem and the trial court refused; reasoning that the guardian ad litem was acting as both guardian and attorney for the child. *Id.* Citing generally to this court's opinion in *Crosby* and the language of R.C. 3109.04(C), this court held the trial court should have allowed counsel to cross-examine the guardian ad litem, but that the record did not disclose prejudice to the plaintiff. *Smith*. This court explained the report of the guardian ad litem was only one of several factors considered by the trial court in reaching its decision. *Id.* This court further reasoned: "Given that the trial court also gave counsel an opportunity to submit closing arguments which included objections to the guardian's report, we cannot find prejudice on this record in the trial court's refusal to permit cross-examination of the guardian *ad litem*." *Id.*, citing *Shoff v. Shoff*, 10th Dist. No. 97APF10-1377 (June 30, 1998).

{¶ 34} On review of the record in the case before us, we do not find the trial court relied solely on the information contained in Dr. Oestreich's report to impute income to appellant for purposes of child support. Significantly, the trial court also considered the statutory factors, pursuant to R.C. 3119.01(C)(17)(a), requiring a weighing of the evidence and testimony by the trier of fact in determining appellant's imputed income.

{¶ 35} In addition, Dr. Oestreich's report was provided to the parties on March 27, 2020, while the first day of testimony of the parties was on June 23, 2020. Appellant does not assert that he did not receive the report less than seven days from trial. *See* Civ.R. 75(D); *see also* R.C. 3109.04(C). The record reflects appellant subpoenaed witnesses to testify at trial, however, Dr. Oestreich was not one of them. Appellant argues that his position would have been bolstered by his ability to cross-examine Dr. Oestreich; however, the record reflects appellant raised all issues with Dr. Oestreich's report while testifying on direct.

{¶ 36} With all this in mind, we cannot find the trial court plainly erred in admitting Dr. Oestreich's report. Furthermore, even if we were to find error, it was harmless.

{¶ 37} In support of his argument that Dr. Oestreich's report was premised on faulty assumptions, appellant points to his own testimony and evidence he presented that: (1) he was struggling financially, (2) he was working 12 hours a day as an Uber driver, (3) he had

an average income over the preceding 3 years of $11,322 per Lavelle, (4) his ability to do "sales-man face to face" outside sales was impaired during the pandemic, and (5) his ability to look for higher paying jobs was not good because of the pandemic. (Appellant's Brief at 20.) Ultimately, appellant contends Dr. Oestreich's findings were based on unrealistic assumptions in a pandemic environment.

{¶ 38} The decree reveals the trial court carefully considered and weighed evidence regarding appellant's employment with Uber. The court considered appellant's evidence regarding his Uber earnings, including earnings in May 2020 reflecting that he netted $6,699.15. The court also considered appellant's expenses related to his Uber driving. The court agreed with appellant that working 72-84 hours per week is unrealistic.

{¶ 39} The decree also reveals the trial court carefully considered and weighed Lavelle's report. The court noted Lavelle stated he did not find evidence of significant unreported cash transactions, but also noted Lavelle stated appellant does not maintain contemporaneous detailed accounting records of his African antique business which involves cash transactions at art shows. The court further observed that Lavelle gave the caveat that appellant's $11,322 per year income estimate did not include a valuation of imputed income, noting that Lavelle specifically stated he would not be responsible to make such a determination, and further he was not trained to be an employment evaluator.

{¶ 40} The trial court also considered other evidence, including evidence that appellant is "highly educated, highly skilled and, *by his own admission*, capable of earning 6 figures per year."[4] (Emphasis sic.) (Decree at 17.)

{¶ 41} Review of the record supports the trial court's reliance on the same evidence Dr. Oestreich discussed in his report which is reflected in the decree. Appellant testified he has been selling African art for 18 years to people, museums, galleries, and collectors around the country and asserts his experience is in selling objects. In evaluating the income generated from appellant's art sales, Dr. Oestreich's report states "[i]n most years, he averaged more closely to $50,000 per year selling African artwork." (Report at 3.) The court noted that selling African antiques was not the only retail sales opportunity available to appellant.

---

[4] Appellant testified in October 2018 he secured a job earning a "[q]uarter-million-dollar income." (Tr. Vol. IV at 230, 232.) (*See also* Report at 4.)

{¶ 42} Appellant also testified that in October 2018 he was hired by a company called KTM, located in Florida, that sent him to Sierra Leone, for which he was to earn a quarter million-dollar salary. Dr. Oestreich references this employment in his report stating appellant secured a job as a diamond evaluation specialist as evidenced by a memorandum of understanding given to Dr. Oestreich from KT Diamond Partners dated October 7, 2018 that would have paid appellant well into six figures. Appellant testified, and Dr. Oestreich reported, contact by third parties to appellant's employer resulted in his termination from KT Diamond Partners.

{¶ 43} Finally, Dr. Oestreich opined that appellant's capacity to earn $35,000 annually as an Uber driver and as a sales representative he is expected to start at $50,000 per year with a better upside for the future. Pursuant to the trial court's consideration of the R.C. 3119.01(C)(17)(a) factors, and in accord with the evidence presented by appellant regarding his current Uber earnings and the entirety of Dr. Oestreich's report, the court found appellant's income for purposes of child support is $50,000 per annum.

{¶ 44} Based on the foregoing, we cannot find Dr. Oestreich's report was founded on faulty assumptions.

{¶ 45} Accordingly, we overrule appellant's second assignment of error.

## IV. Conclusion

{¶ 46} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

————————