[Cite as *Bell v. Kroger Co.*, 2025-Ohio-2495.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

John Bell,                                      :

    Plaintiff-Appellant,              :

                                               No. 24AP-713

v.                                              :     (C.P.C. No. 23CV-4219)

The Kroger Company et al.,                      :     (REGULAR CALENDAR)

    Defendants-Appellees.             :

---

D E C I S I O N

Rendered on July 15, 2025

---

**On brief:** *Beausay & Nichols Law Firm*, and *Jacob J. Beausay*, for appellant. **Argued:** *Jacob J. Beausay.*

**On brief:** *Marshall Dennehey P.C.*, and *Jillian L. Dinehart*, for appellees The Kroger Company and Casto Partners, LLC. **Argued:** *Jillian L. Dinehart.*

**On brief:** *Williams & Finkbine Co., LLC,* and *Susan S.R. Petro*, for appellee Rocky Fork Company. **Argued:** *Susan S.R. Petro.*

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, John Bell, appeals from a judgment of the Franklin County Court of Common Pleas granting in part motions to strike the opinions of Bell's expert witness, and granting motions for summary judgment filed by defendants-appellees, The Kroger Company, Casto Partners, LLC, and Rocky Fork Company (collectively, "appellees"). For the following reasons, we affirm.

## I.  Facts and Procedural History

{¶ 2}    On January 25, 2019, Bell slipped and fell on a patch of ice while exiting his vehicle in the parking lot of a Kroger store located in the Westerville Plaza Shopping Center in Westerville, Ohio.  Casto owns the parking lot for that store and Rocky Fork had been contracted to provide snow removal and de-icing services in the parking lot.  Bell filed a complaint in the Franklin County Court of Common Pleas against appellees, asserting their negligence caused his fall and the injuries he suffered.  Bell claimed appellees failed to properly remove snow that had fallen several days earlier and de-ice the parking lot, resulting in a hazardous condition that caused him to fall.

{¶ 3}    Bell testified in a deposition that he drove to the Kroger store after work on the evening of January 25, 2019.  Bell claimed it had snowed several days earlier but that there had not been any snowfall since.  The parking lot at Bell's office had been plowed and salted after the snowfall, and he described that parking lot as being perfectly dry when he left work.  He further asserted he had not encountered any hazardous parking lots in the days immediately prior to January 25, 2019.  Bell was familiar with winter conditions in Ohio, having lived in the state since 1970 after growing up in Chicago.

{¶ 4}    Bell had a handicapped-parking placard, but all the handicapped parking spaces near the Kroger store were occupied.  He drove through the parking lot and parked in the first unoccupied parking space he could find.  Bell stated that the area where he parked was dark and not located under a light, but that the pavement looked black and safe to step onto.  As Bell stepped out of his vehicle, his foot slipped and he fell, landing partially under a neighboring car.  Bell got up and back into his vehicle, then called his family; a member of his family called for emergency medical services.  Bell's daughter arrived shortly after his fall and took a photograph of the area where he fell.  The photograph depicted slush and ice in the area between Bell's vehicle and the adjacent vehicle.  Bell was then transported from the scene for medical treatment.

{¶ 5}    Rocky Fork's records indicated that the parking lot had been plowed on the morning of January 22, 2019, and that salt had been applied to the parking lot twice that morning after the plowing was completed.  Salt had been applied to the parking lot again on the morning of January 24 and the morning of January 25.  The records indicated that salt was applied for 6 minutes on January 24 and for 1 minute on January 25; however, in

a deposition, the Rocky Fork employee who drove the salt truck asserted those recorded time durations were incorrect. He explained that at times drivers would fail to properly record their start times in Rocky Fork's tablet-based recording system and would later manually adjust to reflect the actual times. The salt truck driver testified he applied approximately 2,000 pounds of salt to the parking lot on January 24 and 3,000 pounds of salt to the parking lot on January 25.

{¶ 6} Bell submitted a report from an expert witness, Richard L. Zimmerman, who concluded that appellees did not meet the appropriate standard of care and that such failure was the cause of Bell's fall and injury. Zimmerman's report noted that the parking lot had been plowed on January 22, 2019, and included historical data about the weather conditions on the following days. The report stated that "approximately 0.91 inches of combined rain and snow precipitation fell, as temperatures dropped to 31 degrees and below, and winds gusted to 30 mph" during a 24-hour period spanning January 23 to January 24. (Pl.'s Ex. 1A at 7, attached to Sept. 10, 2024 Pl.'s Memo Contra.) Zimmerman concluded that during that period the parking lot was subject to "accumulating rain, freezing rain, snow, and ice." (Pl.'s Ex. 1A at 7.) The report further asserted that on January 25 the temperature never rose above 21 degrees. Zimmerman concluded that 6 minutes of salting on January 24 "would likely have been only partially effective at melting all slush, snow, and ice from the incident parking lot" and that 1 minute of salting on January 25 "may not have even affected the incident area" and "would likely have been minimally effective at melting any slush and ice from the incident parking lot." (Pl.'s Ex. 1A at 7.) At a subsequent deposition, Zimmerman acknowledged that time durations for salting may have been incorrect but did not modify his conclusions regarding the effectiveness of Rocky Fork's snow removal and de-icing methods.

{¶ 7} Zimmerman concluded there was an unnatural accumulation of ice in the parking lot at the time of Bell's fall that created a hazardous condition. Zimmerman asserted that the hazardous condition violated the Ohio Building Code, the Ohio Revised Code, the Ohio Fire Code, and Westerville ordinances because the surface was not slip-resistant. Zimmerman further stated that the hazardous condition was not open and obvious to Bell and that appellees had prior notice of the hazardous condition. In deposition testimony, Zimmerman conceded it was virtually impossible to guarantee an

absolutely clear parking lot in winter conditions, but asserted it was possible to achieve a slip-resistant finish in winter through due diligence and a proper sequence of plowing and continued salting. Zimmerman opined that Bell slipped and fell on black ice, not on slush; his conclusion was based on Bell's deposition testimony and the photograph taken by Bell's daughter.

{¶ 8} Appellees moved to strike Zimmerman's expert opinion, asserting it was based on impermissible legal conclusions, was not based on professional education, experience, or testing, and would not be helpful to the finder of fact.

{¶ 9} Kroger and Casto moved for summary judgment, asserting they lacked notice of any dangerous condition beyond typical snowy conditions, that Bell slipped and fell on a natural accumulation of ice and lacked any evidence that it was an unnatural accumulation, and that the icy condition was open and obvious. Rocky Fork also moved for summary judgment, asserting it owed no duty to Bell and that, even if a duty existed, Bell failed to establish a breach of that duty.

{¶ 10} The trial court granted in part the motions to strike Zimmerman's expert opinions, ruling that Zimmerman's opinions related to violations of the Ohio Building Code were not relevant because Bell had not asserted a negligence per se claim. The court also concluded that Zimmerman's report failed to establish how he applied his expertise to determine that Rocky Fork violated the standard of care. The court further ruled that the question of whether the ice was a natural or unnatural accumulation involved a legal conclusion and it would not consider Zimmerman's opinion as to that issue. The trial court also granted appellees' motions for summary judgment, concluding that under the "no-duty winter rule," appellees had no duty to Bell and therefore had not breached any duty to him.

## II. Assignments of Error

{¶ 11} Bell appeals and assigns the following two assignments of error for our review:

> [I.] THE TRIAL COURT ERRED IN STRIKING PORTIONS OF RICHARD ZIMMERMAN'S OPINIONS.
>
> [II.] THE TRIAL COURT ERRED IN APPLYING THE "NO-DUTY WINTER RULE" WHERE GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING ITS APPLICATION.

## III. Discussion

### A. Whether the trial court erred by granting summary judgment for appellees

{¶ 12} We begin with Bell's second assignment of error, in which he asserts the trial court erred by applying the "no-duty winter rule" in granting summary judgment for appellees.

### 1. Standard of review

{¶ 13} We review de novo a trial court's summary judgment decision, conducting an independent review of the record and affording no deference to the trial court's decision. *Premiere Radio Networks, Inc. v Sandblast, L.P.*, 2019-Ohio-4015, ¶ 6 (10th Dist.). Summary judgment is appropriate when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 2010-Ohio-4505, ¶ 29. The moving party bears the burden of informing the court of the basis for the motion and of identifying the portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 1996-Ohio-107, ¶ 18. If the moving party satisfies that burden, the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. *Id.* "Because summary judgment is a procedural device used to terminate litigation, it must be awarded with caution and all doubts must be resolved in favor of the non-moving party." *LVNV Funding, L.L.C. v. Ingram*, 2025-Ohio-442, ¶ 12 (10th Dist.), citing *Davis v. Loopco Industries, Inc.*, 1993-Ohio-195.

### 2. Bell's negligence claims against Kroger and Casto

{¶ 14} A plaintiff asserting negligence must demonstrate the existence of a duty, a breach of that duty, and injury proximately resulting from the breach of duty. *Thatcher v. Lauffer Ravines, L.L.C.*, 2012-Ohio-6193, ¶ 10 (10th Dist.). In a premises liability case, the relationship between the property owner or occupier and the injured party determines the duty owed. *Oliver v. Fox's Food, L.L.C.*, 2023-Ohio-1551, ¶ 11 (10th Dist.). Ohio generally recognizes the common-law classifications of business invitee, licensee, and trespasser. *Thatcher* at ¶ 10. For a business invitee, like Bell in this case, a property owner or occupier owes "a duty of ordinary care in maintaining the premises in a reasonably safe condition so that invitees are not unnecessarily and unreasonably exposed to danger." *Oliver* at ¶ 11.

{¶ 15} Notwithstanding the general duty owed to a business invitee, however, the doctrine referred to as the "no-duty winter rule" provides that "an owner or occupier generally owes no duty to remove natural accumulations of snow or warn users of the dangers associated with such accumulations." *Thatcher* at ¶ 15, citing *Brinkman v. Ross*, 1993-Ohio-72. The rationale for this rule is that "individuals are assumed to appreciate the inherent risks associated with ice and snow arising during typical Ohio winters and protect themselves against such dangers." *Id.*

{¶ 16} Courts have recognized two exceptions to the no-duty winter rule. The first exception occurs when a natural accumulation of snow and ice was "substantially more dangerous than the plaintiff could have anticipated, and the owner or occupier of the premises had notice of such danger." *Oliver* at ¶ 12. The second exception occurs when a property owner or occupier was actively negligent in permitting an "unnatural accumulation" of ice and snow to exist. *Oliver* at ¶ 12. Bell asserts the trial court erred by granting summary judgment in favor of Kroger and Casto because there was a genuine issue of material fact as to whether either of the exceptions applied in this case.

{¶ 17} We must begin with the threshold question of whether the ice on which Bell fell was a natural or unnatural accumulation. *Moore v. Kroger Co.*, 2010-Ohio-5721, ¶ 10 (10th Dist.). "A natural accumulation of ice and snow is one that accumulates as a result of an act of nature or meteorological forces of nature." *Id.* "Natural meteorological forces include inclement weather conditions, low temperatures, drifting snow, strong winds, and freeze cycles." *Thatcher* at ¶ 17. An unnatural accumulation of ice and snow is one "created by causes and factors other than natural meteorological forces." *Id.* "Unnatural accumulations therefore are caused by the intervention of human action doing something that would cause ice and snow to accumulate in unexpected places and ways." *Id.*

{¶ 18} Bell asserts that the ice he fell on was the result of improper plowing and de-icing of the parking lot by Rocky Fork, resulting in residual snow and slush or run-off that melted and re-froze. When asked at his deposition how he believed the ice formed, Bell responded, "I don't think the snow company plowed it down to the pavement" and theorized that "they probably left a skiff of ice or a skiff of snow that possibly stayed, and I don't know if it melted and refroze every night." (Bell Dep. at 91.) Similarly, although Zimmerman's report concluded that Bell fell due to an "unnatural accumulation" of ice, at

his deposition Zimmerman asserted that the ice formed due to improper plowing or de-icing:

> Q: . . . Sir, you say a few times that this is an unnatural accumulation of ice. What does that mean to you?
>
> A: It means that despite the fact of nature doing its worst, there were intervening acts and/or omissions of the salting, plowing company that created the condition.
>
> Q: And what were -- what were those intervening acts or omissions?
>
> A: The plowing and then the salting and then the failure to continue the salting until everything had melted and run to drain and/or was otherwise slip resistant.

(Zimmerman Dep. at 67-68.) Zimmerman further testified that his conclusion was not a "legal opinion," but instead described "what I deem to be unnatural based on the processes that I've reviewed and approved throughout my career as an architect." (Zimmerman Dep. at 79.)

{¶ 19} This court has held that "[w]hen the top portion of a natural accumulation of snow and ice is removed, the accumulation of ice and snow remaining is still a natural accumulation." *Coletta v. Univ. of Akron*, 49 Ohio App.3d 35, 37 (10th Dist. 1988). *See Cunningham v. Thacker Servs., Inc.*, 2003-Ohio-6065, ¶ 14 (10th Dist.) ("Salting or shoveling does not turn a natural accumulation into an unnatural accumulation; moreover, it is unwise as a matter of public policy to punish business owners who, as a courtesy, attempt to maintain safe sidewalks."). *See also Johnson v. CBRE, Inc.*, 2023-Ohio-3518, ¶ 24 (9th Dist.), quoting *Klein v. Ryan's Family Steak House*, 2002-Ohio-2323, ¶ 18 (9th Dist.), quoting *Meyers v. Forest City Ents., Inc.*, 92 Ohio App.3d 351, 354 (5th Dist. 1993) (" ' "Melting snow that refreezes into ice is natural, not an unnatural accumulation of ice." ' "). Further, we have held that "[s]ubsequent accumulations after the initial plowing are not unnatural [n]or is melted run-off from snow piled onto a sloped area which runs down and re-freezes, as this must be anticipated by all who live in a snow belt area." *Moore*, 2010-Ohio-5721, at ¶ 10 (10th Dist.). *See Jackson v. J-F Ents., Inc.*, 2011-Ohio-1543, ¶ 14 (6th Dist.) ("Where melted run-off from snow freezes creating black ice, such accumulation of ice is not unnatural."). Construing the evidence and reasonable inferences in favor of

Bell, there was no evidence in this case of human intervention that caused ice to "accumulate in unexpected places and ways." *Thatcher*, 2012-Ohio-6193, at ¶ 17 (10th Dist.). *Compare Sleeper v. Casto Mgt. Servs.*, 2013-Ohio-3336, ¶ 34 (10th Dist.) (concluding that icy patch in parking lot that resulted from a leaky gutter was an unnatural accumulation of ice when there was no evidence it had rained or snowed on the day of the incident and there was testimony that the parking lot was completely dry except for that patch of ice). There was no genuine issue of material fact as to whether the ice was an unnatural accumulation; therefore, the second exception to the no-duty winter rule could not apply.

{¶ 20} To trigger the first exception to the no-duty winter rule, Bell must establish that the natural accumulation of ice on which he fell was "substantially more dangerous" than he could have anticipated and that Kroger or Casto had notice of such danger. *Oliver*, 2023-Ohio-1551, at ¶ 12 (10th Dist.). This court considered the application of that exception in a similar case in which the plaintiff slipped and fell on an icy sidewalk adjacent to a Valvoline store where she had taken her vehicle for service. *Cooper v. Vavoline Instant Oil Change*, 2007-Ohio-5930, ¶ 2 (10th Dist.). The weather at the time was snowy and icy. *Id.* The plaintiff claimed that the sidewalk was cleared of snow and appeared to have been recently shoveled. *Id.* The plaintiff asserted negligence based on failure to salt the sidewalk after shoveling the snow. *Id.* at ¶ 3. The trial court granted summary judgment in favor of the defendant, concluding the plaintiff failed to present sufficient evidence to establish that the exceptions to the no-duty winter rule applied. *Id.* at ¶ 4.

{¶ 21} On appeal in *Cooper*, this court rejected the argument that the icy patch where the plaintiff fell was an unnatural accumulation resulting from shoveling the sidewalk and failing to apply salt after shoveling. *Id.* at ¶ 19-21. The court found there was no evidence of any defect causing the accumulation or any source of the accumulated ice, and concluded that the ice "was, simply, the underlying layer of ice left on the sidewalk after Valvoline shoveled the top layer of snow," which was a natural accumulation. *Id.* at ¶ 21. With respect to the "substantially more dangerous" exception, we concluded there was "no evidence that the ice upon which [the plaintiff] fell concealed a dangerous condition nor [was] there evidence that the ice created a condition substantially more dangerous than that normally associated with ice and snow." *Id.* at ¶ 24. The hazard at issue was "simply

the slippery nature of the ice on the sidewalk." *Id.* We noted the plaintiff's admission that the weather was snowy and icy at the time and that, as a lifelong resident of Ohio, she was aware of the risks of ice and snow generally. Therefore, we concluded the record lacked evidence that the natural accumulation of ice upon which the plaintiff fell was substantially more dangerous than a business invitee should reasonably have anticipated based on knowledge of the inclement winter weather. *Id.*

{¶ 22} Like *Cooper*, in this case there is no evidence that the natural accumulation of ice on which Bell fell was substantially more dangerous than a business invitee should have anticipated under the circumstances. Although Bell testified that the parking lot at his workplace and other parking lots he had traveled to in recent days were clear, Zimmerman's expert report indicated there was precipitation on January 23 to January 24. There was also evidence that Rocky Fork employees had applied salt to the parking lot on the morning of the January 24 and January 25. Zimmerman's expert report asserted that the temperature never rose above 21 degrees on January 25, 2019. As in *Cooper*, the hazard at issue was the slippery nature of the ice remaining in the parking lot after Rocky Fork's plowing and de-icing measures. There was no evidence that the ice on which Bell fell concealed a dangerous condition nor was there any evidence that the ice created a condition substantially more dangerous than that normally associated with ice and snow. *See Cooper* at ¶ 24. Bell was a long-time resident of central Ohio and was familiar with the risks of ice and snow. Thus, in this case, the record lacks evidence that the natural accumulation of ice that Bell fell upon was substantially more dangerous than a business invitee should reasonably have anticipated based on knowledge of the inclement winter weather. *See id.*

{¶ 23} Accordingly, the trial court did not err by concluding that neither of the exceptions to the no-duty winter rule applied and by granting summary judgment in favor of Kroger and Casto based on that doctrine.

### 3. Bell's negligence claim against Rocky Fork

{¶ 24} Bell further argues that the trial court failed to address his negligence claim against Rocky Fork and asserts there was a genuine issue of material fact as to whether Rocky Fork was negligent in plowing and de-icing the parking lot. Although the trial court focused primarily on the no-duty winter rule, which applies to property owners and

occupiers, the court also concluded that Bell failed to establish that Rocky Fork's plowing and de-icing of the parking lot was negligent.

{¶ 25} The basic elements of Bell's claim against Rocky Fork are the same as for his claims against Kroger and Casto—i.e., existence of a duty, breach of that duty, and damages proximately caused by the breach—however, the duty Rocky Fork owed to Bell is not dictated by his status as a business invitee. *Lawson v. Scinto*, 2009-Ohio-2659, ¶ 11 (10th Dist.). "In an ordinary negligence case, once the existence of a duty is found, defendant must exercise the degree of care that an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Id.* Ohio courts have held that "[t]o establish liability based upon negligent plowing in a commercial lot, an appellant must prove that negligent plowing created or aggravated a hazardous condition." *Dunbar v. Denny's Restaurant*, 2006-Ohio-1248, ¶ 13 (8th Dist.), citing *Smith v. Fraternal Order of Eagles*, 39 Ohio App.3d 97, 98 (8th Dist. 1987). *See Burress v. Associated Land Group*, 2009-Ohio-2450, ¶ 22 (12th Dist.) ("To claim liability based upon negligent plowing in a commercial lot, an appellant must prove that negligent plowing created or aggravated a hazardous condition.").

{¶ 26} Bell asserts that Zimmerman's expert opinion and the testimony of the Rocky Fork employees who plowed and salted the parking lot establish a genuine issue of material fact as to whether Rocky Fork was negligent in plowing and de-icing the parking lot. Based on Bell's deposition testimony and the photograph taken by Bell's daughter, which showed the presence of slush and ice in the area where Bell parked his vehicle, Zimmerman concluded that Bell slipped on black ice. Zimmerman conceded it was "virtually impossible to guarantee an absolutely clear parking lot with no snow [or] slush" but contended it was possible to ensure a slip-resistant finish through due diligence and continued applications of salt. (Zimmerman Dep. at 31.) He further asserted that "no amount of remaining ice" would be an acceptable level of safety. (Zimmerman Dep. at 69-70.) Zimmerman testified it was necessary to continue salting until "everything had melted and run to drain and/or was otherwise slip resistant." (Zimmerman Dep. at 68.) When asked if he had an opinion as to when the parking lot should have been de-iced, Zimmerman asserted it should have occurred "in a prompt manner following the plowing and the first pass of salt" but also stated "[w]hether that's 2 hours, 6 hours, 8 hours, 24 hours, I can't make that

determination." (Zimmerman Dep. at 68.)  At his deposition, Zimmerman did not recall what de-icing material Rocky Fork used on the parking lot and did not have an opinion on whether the amount of de-icing material used was appropriate at the time it was applied. He also admitted he was not specifically familiar with the spreading rates for different de-icing products. Zimmerman's expert report did not address the amount of de-icing material applied to the parking lot by Rocky Fork on January 24 and January 25 when assessing the effectiveness of de-icing measures.  In effect, Zimmerman concluded that the standard of care required a slip-resistant surface and therefore Rocky Fork must have violated the standard of care because Bell slipped and fell.

{¶ 27} Rocky Fork's records established that the parking lot was plowed on the morning of January 22, 2019, and that salt was applied to the parking lot twice that morning after it was plowed.  The plow truck driver was deposed and described the process used in plowing the parking lot.  He testified that after plowing the lot he would have inspected it to ensure there was no snow leftover in the plowed areas.  A Rocky Fork employee also applied salt to the parking lot on the morning of January 24 and January 25. That employee was deposed and testified he applied approximately 2,000 pounds of salt to the parking lot on January 24 and 3,000 pounds of salt to the parking lot on January 25. He asserted that he would have inspected the parking lot after applying salt to ensure that it was melting the snow or ice and that he would have applied more salt if it was not melting.

{¶ 28} Viewed in the light most favorable to Bell, the evidence established that Rocky Fork plowed the parking lot on the morning of January 22, 2019, and salted it on the mornings of January 22, January 24, and January 25.  The evidence also established that on the evening of January 25, there was ice and slush in and around the parking space where Bell parked his vehicle and that he slipped and fell.  Zimmerman asserted that Rocky Fork failed to meet the standard of care because there was ice present that Bell could slip on but did not offer any specific details as to why Rocky Fork's plowing and de-icing was insufficient.  Under these circumstances, we cannot conclude that Bell has established a genuine issue of material fact as to whether Rocky Fork was negligent.  *See Dunbar*, 2006-Ohio-1248, at ¶ 13 (8th Dist.), citing *Davis v. The Timbers Owners' Assn.*, 2000 Ohio App. LEXIS 115 (1st Dist. Jan. 21, 2000) ("Persons who plow or shovel snow are not negligent

merely because ice remains after snow is cleared."). Therefore, the trial court did not err by granting summary judgment in favor of Rocky Fork.

{¶ 29} Based on our de novo review of the record, we conclude that the trial court did not err by granting summary judgment in favor of appellees. Accordingly, we overrule Bell's second assignment of error.

## B. Whether the trial court erred by striking portions of Zimmerman's expert opinion

{¶ 30} Next, we turn to Bell's first assignment of error, in which he asserts the trial court erred by excluding portions of Zimmerman's expert testimony. The trial court granted in part appellees' motions to strike and excluded portions of Zimmerman's testimony related to violations of the Ohio Building Code, the standard of care for plowing and de-icing a parking lot and Rocky Fork's effectiveness in clearing the parking lot, and whether there was an unnatural accumulation of ice in the parking lot.

{¶ 31} Generally, admission or exclusion of evidence is within the discretion of the trial court, so long as that discretion is exercised consistently with the rules of procedure and evidence. *Berete v. Berete*, 2021-Ohio-2941, ¶ 9 (10th Dist.). We will not reverse a trial court's decision to admit or exclude evidence absent an abuse of discretion. *Id.* An abuse of discretion occurs when a trial court's decision is arbitrary, unreasonable, or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 32} "An evidentiary ruling by a trial court may not be the basis of a claim of error unless the person claiming that error can establish that a substantial right has been affected." *Lips v. Univ. of Cincinnati College of Medicine*, 2013-Ohio-1205, ¶ 49 (10th Dist.). "In order to establish that a substantial right has been affected, one must show that the alleged error affected the final determination of the case." *Id.*

{¶ 33} In our de novo review of the trial court's summary judgment decision, set forth above, we considered all portions of Zimmerman's expert report and deposition testimony and did not limit our review to the portions admitted by the trial court. Even when considering all portions of Zimmerman's expert report and deposition testimony, we conclude that the trial court did not err by granting summary judgment in favor of appellees. Therefore, even if the trial court erred by striking portions of Zimmerman's report and testimony, such error was harmless because Bell cannot demonstrate that it

affected the final determination of the case. *See Lips* at ¶ 60 (finding harmless error in excluding expert's rebuttal testimony).

{¶ 34} Accordingly, we overrule Bell's first assignment of error.

## IV. Conclusion

{¶ 35} For the foregoing reasons, we overrule Bell's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and LELAND, JJ., concur.

———————